**IN THE COURT OF APPEALS OF IOWA**

No. 24-2083
Filed March 5, 2025

**IN THE INTEREST OF N.M.,**
**Minor Child,**

**J.M., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Clarke County, William Price, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Aaron H. Ginkens of Ginkens Law Firm, P.L.C., West Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Deborah L. Johnson, Altoona, attorney and guardian ad litem for minor child.

Considered by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

A father appeals the termination of his parental rights to his child,[1] challenging the sufficiency of the evidence supporting the grounds for termination, claiming termination is not in the child's best interests, and arguing a permissive exception to termination applies. Upon our review, we affirm.

## I.    Background Facts and Proceedings

N.M. tested positive for THC at birth in May 2023. The Iowa Department of Health and Human Services (HHS) initiated services to address the parents' substance use. The child was allowed to remain in the parents' custody under HHS supervision. But the parents failed to comply with drug testing, and additional concerns arose about methamphetamine use and drug paraphernalia in their home. In July, the child tested positive for methamphetamine. The child was removed from parental custody, adjudicated a child in need of assistance, and placed in foster care.

The father had a medical marijuana card, but he reported a history of using other substances, including heroin. The father completed a substance-use evaluation that did not result in recommended treatment. The parents had a history of domestic violence but maintained they were no longer in a relationship. HHS reported "[t]here is no current concern for domestic violence," but "[i]f a

---

[1] The mother consented to the termination of her parental rights. The mother's parental rights to two other children were terminated in July 2024, because of unresolved substance-use and mental-health concerns.

concern arises [HHS] will address it at that time." The father engaged in services and began participating in SafeCare.[2]

By October, the father had progressed to overnight visits with the child. Yet in November, law enforcement was called to his home for a dispute between the father and his roommate. Law enforcement discovered the mother and the child unsupervised.[3] The father arrived shortly thereafter, and he alleged the woman present was his new girlfriend rather than the mother. HHS discussed changing the father's visits back to fully supervised based on concerns "regarding his ability to be protective as he allowed the child's mother to be around without supervision." Before that could happen, the father made "statements of having gun charges and not being afraid to get more to shoot everyone who is in the way of him and his daughter,"[4] which prompted HHS to require his visits to take place via video-call temporarily. Even so, in January 2024, the parents were given a three-month extension to continue to work toward reunification.

Thereafter, the father was inconsistent with his visits with the child. And although he had been minimally compliant with drug testing up to that point, he also stopped participating in drug screens. In April, he reported he had recently used methamphetamine, marijuana,[5] and a prescription medication not prescribed to him. In May, the father reported his drug patch had fallen off, so it could not be tested. HHS requested that he obtain a new substance-use evaluation. The father

---

[2] The SafeCare program is an 18-week specialized curriculum focused on safety, health, and parent/child interactions.
[3] The mother did not progress beyond fully supervised visits with the child.
[4] In 2022, the father was convicted of dominion/control of firearm by a felon.
[5] The father had not renewed his medical marijuana card, which expired in October 2023.

was also not attending mental-health services, and HHS requested he complete another mental-health evaluation. As of mid-June, the father had not signed a release to allow HHS to confirm whether the evaluations were completed, and if so, their recommendations. Meanwhile, the father was unsuccessfully discharged from SafeCare due to inconsistent participation.

The parents continued their volatile off-and-on relationship, and HHS remained concerned about their propensity to engage in domestic violence with each other. The father also sent threatening messages to HHS service providers. In late June, the parents' former roommates filed no-contact orders against them. Thereafter, the parents reported they were living in a hotel, but they would not disclose the location of the hotel.

The State filed a termination-of-parental-rights petition in July. The termination hearing took place in October. At the time of the hearing, the father was in jail following his arrest for a domestic assault involving the mother, which occurred ten days prior. A no-contact order was entered against the father, but the mother had already inquired about what was required for her to drop the order. Neither parent had attended any recent drug screens. The mother consented to termination of her parental rights. Relating to the father, HHS reported:

> Currently HHS has no signed release for any of [the father's] services. At this point in time the department does not have any knowledge as to if he is addressing his substance abuse, mental health, domestic violence, or completing any services due to the lack of a release to speak with providers to confirm that he is enrolled and completing services. To [HHS's] knowledge [the father] is not addressing his substance abuse concerns.

The father testified, maintaining he did not have a substance-use problem "at this moment." He stated he last used marijuana "two or three months ago" and he last

used methamphetamine "before the case even started back in 2023," contrary to his other admissions. The father stated he was not "properly medicated" for parts of this case, and with "[m]y mental health issues, if I'm not properly medicated and I'm not on the right track, it's not safe for me or anybody really." The father testified: "I signed my parental rights over" to three older children "in a prior case" "because I wasn't capable mentally, physically, or financially to take care of the child[ren]," but "this case is different." He stated he has an "[a]mazing" bond with N.M. and "will do anything to keep contact with [her], even if it is just visits, whatever it takes."

HHS and the guardian ad litem recommended termination of the father's parental rights. The court entered an order terminating his parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2024). The father appeals.

## II.   Analysis

We review termination-of-parental-rights proceedings de novo, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). The father's appeal touches on each of these steps.

### A.   Grounds for Termination

The district court terminated the father's parental rights on two statutory grounds, but we may affirm if one ground is supported by the record. *In re A.B.*, 957 N.W.2d 280, 313 (Iowa 2021). We focus on section 232.116(1)(h), which entails our review of the father's claim that he "requested increased visitation with his child and requested [HHS] to return the child to his custody" and that he has

"sufficient income to provide for his child" and "housing that would be suitable for the child to be returned to." That said, the relevant inquiry under subparagraph (h)(4) is whether a child can be safely returned to the parent "at the present time"—meaning at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168–69 (Iowa 2021). At the time of the termination hearing, the father was in jail. "It is therefore beyond dispute that the [child] could not be safely returned to [him] at the time of the hearing." *In re K.E.*, No. 24-1248, 2024 WL 5153930, at *3 (Iowa Ct. App. Dec. 18, 2024). Aside from that obvious barrier to reunification, the father continues to have unaddressed substance-use and mental-health concerns that affect his ability to safely and soberly care for the child. We concur with the court's assessment that the child could not be returned to the father's custody at the time of the termination hearing. Iowa Code section 232.116(1)(h) was satisfied.

## B. Best Interests

When determining best interests, we give primary weight to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *accord In re L.T.*, 924 N.W.2d 521, 528 (Iowa 2019) ("We look to the child's long-range as well as immediate interests, consider what the future holds for the child if returned to the parents, and weigh the child's safety and need for a permanent home." (cleaned up)).

These factors all weigh in favor of termination here. As the HHS caseworker opined:

> [N.M.] has been out of the parental home for numerous months. I mean, she has been out of her home at least 15 months, and she is only about 17 months old. So she has been out of the home for a majority of the time. And throughout that time, neither parent has fully addressed their substance abuse concerns, as well as mental health on father's side not being addressed.
>
> There also continues to be ongoing concerns for domestic violence in the home and a lack of stability for the parents. I do know that an extension was previously granted for [N.M.] back in January, but at this point in time, we have not made any progress towards reunification.

Under this record, clear and convincing evidence shows that termination is in the child's best interests.

## C. Permissive Exception to Termination

The father asks us to find an exception to termination under section 232.116(3)(c), claiming "[t]here was sufficient evidence in the record to show that a close relationship existed between the Father and child and that the State's request for termination of the Father's parental rights should be denied." To avoid termination under section 232.116(3)(c), the "law requires clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *A.B.*, 956 N.W.2d at 169 (quoting Iowa Code § 232.116(3)(c)). This exception is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted).

The caseworker described N.M. as "thriving" in her current placement— "very comfortable, very well-adapted to the home she has been in, as well as adapted to being placed back into daycare." And the caseworker testified although the father was generally "appropriate" during visits with the child, there were "times where [the father] has chosen to opt out of interactions due to his erratic behaviors and him feeling like he was not a safe person to be around [N.M.] at that time."

The district court found the father had not "offered evidence to establish a[n] exception for termination of [his] parental rights." We agree. Under these circumstances, the father has not established termination of his rights will be detrimental to the child.

We affirm the termination of the father's parental rights.

**AFFIRMED.**